# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

CODY LEAVITT,

    *Plaintiff*,

vs.

HAROLD WICKHAM, *et al.*,

    *Defendants*.

2:13-cv-00490-GMN-CWH

ORDER

    This prison civil rights action comes before the Court on plaintiff's "emergency" motion (#4) to reopen the case and motion (#5) for appointment of counsel. The motion has been filed within the time period for seeking relief under Rule 59 of the Federal Rules of Civil Procedure.

    Plaintiff did not properly commence the action with a properly-completed application to proceed *in forma pauperis*. Plaintiff attached neither a properly-completed financial certificate nor a statement of his inmate trust account for the prior six months, with both being required. On April 2, 2013, the Court accordingly dismissed the action without prejudice to the filing of a new complaint in a new action with a new and properly-completed pauper application. The Court noted in the dismissal order that it did not appear from the allegations presented that a dismissal without prejudice of the improperly-commenced action would lead to a promptly-filed new action being untimely.

    In the motion to reopen, plaintiff maintains that the action presents emergency and exceptional circumstances, which are discussed further below. Plaintiff requests that: (a) the action be reopened to allow entry of a temporary restraining order (TRO); (b) the pauper application requirements and all other procedural requirements be waived in favor of immediate merits review; (c) counsel be appointed; and (d) he be allowed an opportunity to amend the complaint.

    As a discretionary matter under Rule 59 and out of abundance of caution, the Court

1 will reopen the present matter and provide plaintiff an opportunity to correct the deficiencies
2 in the pauper application in the present action.  The Court is not persuaded on the papers
3 presented and showing made, however, that plaintiff presents emergency, exceptional,
4 exigent and/or other circumstances warranting the additional relief requested at this juncture,
5 other than allowance of an opportunity to amend the complaint.

6       In the original complaint, plaintiff Cody Leavitt sought punitive damages as well as
7 declaratory and injunctive relief after correctional officials and medical personnel refused to
8 "cease and desist" blood draws despite his requests that they do so.

9       In an October 30, 2012, inmate request form (or "kite") attached with the complaint,
10 plaintiff asked: "Why am I getting blood draws?"  The November 2, 2012, response stated:
11 "There's an order written on your chart related to an incident that happened in April 2012."
12 Plaintiff further quotes the responses to his first-level and second-level grievances as stating:

> It was reported to nurses by staff that you were involved in an incident in which it was likely that there was a blood or body fluid exposure, and in such cases it is necessary to have exposure protocol labs drawn on everyone involved in the incident. . . . .
>
> . . . . .
>
> Mr. Leavitt, your blood draws are being done due to an incident you were involved in which requires us to draw this blood. This is a legal requirement that we cannot ignore. . . . .

19 #1-1, at 8-9.

20       In Count I, plaintiff alleged that the blood draws were being taken in violation of, *inter*
21 *alia*, the Fourth Amendment because the April 2012 incident never actually happened but
22 instead was based upon an unfounded anonymous "snitch kite."  Plaintiff conclusorily alleged
23 that the incident was "cleared" when the state corrections department inspector general's
24 office concluded an investigation, although he presented few specific allegations on personal
25 knowledge.

26       In Count II, plaintiff alleged that he was being subjected to cruel and unusual
27 punishment in violation of, *inter alia*, the Eighth Amendment.  He referred vaguely to alleged
28 "Mengele-esque hemolarceny" nearly three years before and at a different Nevada prison.

He further refers to another incident at his current prison. Combining the allegations of the complaint with those in the pending motions,[1] plaintiff appears to allege that during an October 16, 2012, blood draw some blood was released outside the collection instruments, a bruise was left on his arm, and he became light-headed on the way back to his cell. Plaintiff refers to a host of potential complications, "even if not death," that he believes may result from an errant blood draw procedure.

In Count III, plaintiff alleges that he has been denied procedural and substantive due process of law in violation of, *inter alia*, the Fourteenth Amendment because the blood draws have continued despite his requests and grievances seeking to stop them. He alleges that his unspecified "medical condition" is "notoriously known" in his unit and that he is exempted from donating blood because of the unspecified condition.

While there are limits on the ability of correctional authorities to take a blood draw from an inmate, taking a blood draw without the inmate's prior consent or over his objection does not violate the Constitution in and of itself. Under established law, prison officials are not required to provide an inmate a hearing before taking a blood draw, and doing so despite the inmate's refusal to consent in and of itself does not implicate the Due Process Clause. *E.g., Hamilton v. Brown*, 630 F.3d 889, 896-97 (9th Cir. 2011). Nor does a forced blood draw violate the Eighth Amendment's prohibition against cruel and unusual punishment. 630 F.3d at 897. The taking of blood does potentially implicate privacy rights protected by the Fourth Amendment, but Fourth Amendment rights for inmates occur at the lowest end of the expectation of privacy spectrum. 630 F.3d at 895. As the plurality opinion noted in *United States v. Kincade*, 379 F.3d 813 (9th Cir. 2004)(*en banc*), blood draws are a routine fact of modern life and inmates "have been lawfully subject to much more severe intrusions of their corporeal privacy than a sterile blood draw conducted by a trained medical professional." 379 F.3d at 837; *see also Hamilton*, 630 F.3d at 804-96.

Against this backdrop, the Court is not persuaded that it should waive all procedural

---

[1] See #4, at 8, lines 13-16.

-3-

requirements in this matter – including the requirement that plaintiff present a properly-completed pauper application – merely because plaintiff is challenging compulsory blood draws by prison officials. Plaintiff conceivably perhaps ultimately might prevail on his Fourth Amendment claim, in which he alleges that prison officials allegedly in truth have no factual justification for the blood draws being taken. However, nothing in the often conclusory allegations of the complaint establishes persuasively that plaintiff presents such an exigent circumstance that he must be excused from all procedural requirements for pursuing a prisoner federal civil rights action. Plaintiff's stated distrust of state correctional medical personnel because prisoners have sued such personnel in the past does not lead to a contrary conclusion. Nor does the alleged blood draw incident in October 2012 or his conclusory allegations of an unspecified "medical condition" contraindicating blood draws.

The Court will reopen this improperly-commenced matter rather than requiring that plaintiff properly commence a new action, as a discretionary matter and out of an abundance of caution. For the matter to proceed, however, plaintiff must present a properly-completed pauper application. If he wishes to file an amended complaint, Rule 15(a) of the Federal Rules of Civil Procedure permits him to do so once as a matter of course in the present procedural context. If he wishes to seek a temporary restraining order (TRO), he must file a separate written motion for a TRO. Embedding a request for a TRO within a complaint or an amended complaint does not place such a request under active submission on the Court's docket. A motion for a TRO further must comply with Rule 65(b)(1).

The motion for appointment of counsel will be denied. There is no constitutional right to appointed counsel in a federal civil rights action. *E.g., Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *opinion reinstated in pertinent part*, 154 F.3d 952, 954 n.1 (9th Cir. 1998)(*en banc*). The provision in 28 U.S.C. § 1915(e)(1), however, gives a district court the discretion to request that an attorney represent an indigent civil litigant. *See,e.g., Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986); 28 U.S.C. § 1915(e)(1)("The court may

/ / /

/ / /

request an attorney to represent any person unable to afford counsel.").[2] While the decision to request counsel is a matter that lies within the discretion of the district court, the court may exercise this discretion to request or "appoint" counsel only under "exceptional circumstances." *E.g., Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A finding of exceptional circumstances requires an evaluation of both the likelihood of success on the merits and the plaintiff's ability to articulate his claims *pro se* in light of the complexity of the legal issues involved. *Id.* Neither of these factors is determinative and both must be viewed together before reaching a decision. *Id.*

In the present case, many of plaintiff's federal claims lack merit on their face, and the outcome on the Fourth Amendment claim will turn upon the underlying factual circumstances concerning why the blood draws are being taken. It thus does not appear at this juncture that one outcome or the other is more likely or probable. Further, the facts alleged and issues raised in truth are not of substantial complexity; and plaintiff has demonstrated sufficient writing skill, knowledge and organizational ability to adequately articulate his claims. While almost any *pro se* litigant would be better served with the assistance of counsel, that is not the standard; and the plaintiff instead must show that because of the complexity of the claims he is unable to articulate his position. *Rand*, 113 F.3d at 1525. Plaintiff has not made that showing here. Plaintiff's contention that the case requires extensive factual and legal investigation that only an attorney can conduct is unpersuasive. Plaintiff's further contention that the prison law library resources are inadequate to the task at hand is belied by the fact that plaintiff cites legions of legal materials in his pleadings and motion papers. Accordingly, looking to both the likelihood of ultimate success on the merits and the plaintiff's ability to articulate his claims, the Court finds that exceptional circumstances do not exist in this case warranting a judicial request to a private attorney to voluntarily represent plaintiff. The counsel motion therefore will be denied.

---

[2] The statute does not give the court the authority to make the attorney accept the appointment, such that counsel remains free to decline the request. *See Mallard v. United States District Court*, 490 U.S. 296 (1989).

The Court will reopen the matter and provide plaintiff an opportunity to present a properly-completed pauper application. The financial materials apparently from a prior state court case that plaintiff submitted with the motion to reopen are not sufficient. Plaintiff does not need a free copy of the local rules to file a properly-completed pauper application, and the Court does not provide litigants free copies of the local rules. The Court's orders in this case and the instructions for the pauper application provides plaintiff the information that he needs.

**IT THEREFORE IS ORDERED** that plaintiff's "emergency" motion (#4) to reopen the case is **GRANTED IN PART and DENIED IN PART** such that the prior order of dismissal and final judgment hereby are **VACATED** and this matter is **REOPENED**, with all other requests for relief asserted in the motion being denied.

**IT FURTHER IS ORDERED** that plaintiff shall have **thirty (30) days** from entry of this order within which to mail to the Clerk of Court for filing a new and properly-completed application to proceed *in forma pauperis* with all required, and new, financial attachments, *i.e.*, (a) a financial certificate on the required form properly completed and executed by an authorized institutional officer; and (b) a current statement of the plaintiff's inmate trust account for the prior six months. If plaintiff does not timely submit a new pauper application and/or if the new application is not properly completed in all respects, this action will again be dismissed without further advance notice.

**IT FURTHER IS ORDERED** that plaintiff's motion (#5) for appointment of counsel is **DENIED**.

The Clerk shall SEND plaintiff a copy of the pauper form and instructions.

**DATED** this 23rd day of April, 2013.

_____
Gloria M. Navarro
United States District Judge