# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| CODY LEAVITT, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:13-cv-00490-GMN-CWH |
| vs. ) | |
| ) | **ORDER** |
| HAROLD WICKHAM, *et al.*, ) | |
| ) | |
| Defendants. ) | |

Pending before the Court is a Motion for Summary Judgment (ECF No. 39) filed by Defendants Harold Wickham, Linda Adams, Isidro Baca, Greg Cox, Frank Dreesen, Jerry Howell, Doni Jennings, E.K. McDaniel, and Jennifer Nash (collectively, "Defendants"). Additionally before the Court is a Motion for Leave to File Sur-Reply (ECF No. 49) filed by Plaintiff Cody Leavitt ("Plaintiff"). Both motions are fully briefed. For the reasons discussed below, the Court **DENIES** Plaintiff's Motion for Leave to File Sur-Reply and **GRANTS** Defendants' Motion for Summary Judgment.

## I. BACKGROUND

This case arises out of alleged Fourth and Fourteenth Amendment violations resulting from a prisoner's unconsented blood draw. (Compl. at 1, ECF No. 1-1). Plaintiff Cody Leavitt ("Plaintiff") is an inmate incarcerated in the Nevada Department of Corrections ("NDOC"). (Am. Compl. at 1, ECF No. 9). Although presently housed at Lovelock Correctional Center (Not. of Change of Address at 1, ECF No. 31), the incidents at issue occurred while Plaintiff was housed at High Desert State Prison ("HDSP") (Am. Compl. at 10). On April 15, 2012, an inmate request form ("kite") was anonymously submitted to HDSP corrections officers, alleging that Plaintiff was continuously sexually assaulted by Plaintiff's cellmate. (Ex. A to Defs.' Mot. for Summ. J., ECF No. 39-1). HDSP officers followed institutional procedures

pursuant to a potential Prison Rape Elimination Act violation (Ex. B to Defs.' Mot. for Summ. J., ECF No. 39-2) and, upon submission of the kite, escorted Plaintiff to the infirmary (Ex. C to Defs.' Mot. for Summ. J., ECF No. 39-3).

After HDSP personnel conducted an interview and examination, Plaintiff denied the kite's allegations and refused to go to the hospital. (Am. Compl. at 8, 10; Ex. B to Defs.' Mot. for Summ. J.). The HDSP doctor nevertheless required the mandatory blood draws at six weeks, twelve weeks, and six months after an alleged sexual assault. (Ex. F to Defs.' Mot. for Summ. J., ECF No. 39-6). Accordingly, Plaintiff was unwillingly subjected to blood draws on April 16, 2012, July 9, 2012, and October 16, 2012. (Am. Compl. at 10). Plaintiff contends that the October 16, 2012 blood draw was the most excessive form of the HDSP's "Mengele-esque hemolarceny," as Plaintiff was fasting in accordance to his religious practices and was unwillingly subjected to the blood draw regardless. (*Id.*).

Plaintiff filed his Complaint on March 21, 2013, against numerous employees at HDSP, mainly alleging Fourth, Eighth, and Fourteenth Amendment, and Article I, Section 18 of the Nevada Constitution violations. (Compl. at 1). Plaintiff filed his Amended Complaint on April 30, 2013. (Am. Compl. at 1). Pursuant to a Screening Order, the Court dismissed all of Plaintiff's claims except for the Fourth Amendment unlawful search and seizure violation, the Nevada Constitution violation, and the Fourteenth Amendment procedural due process violation. (ECF No. 28). Subsequently, Defendants filed the instant Motion for Summary Judgment, stating that HDSP's personnel were necessarily acting within their duties in mandating the blood draws and that the actions taken were lawful. (Defs.' Mot. for Summ. J. 5:25–6:4). Specifically, "NDOC employees were required to follow protocol," and "Plaintiff was not arbitrarily subjected to a blood draw and only the amount necessary to perform the test was drawn." (*Id.*).

On July 3, 2014, Plaintiff filed a Motion for Leave to File Sur-Reply, alleging that

Exhibit A to Defendant's Motion for Summary Judgment is "missing nearly a dozen other attachments that Mr. Leavitt affixed thereto." (Mot. for Leave to File Sur-Reply 1:19–20, ECF No. 49). Defendants filed a Response. (ECF No. 50).

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. DISCUSSION

#### A. Motion for Leave to File Sur-Reply

Local Rule 7–2(a)(c) allows a for motion, a response, and a reply. No provision exists for filing a sur-reply. Thus, a party must obtain leave from the Court before filing a sur-reply.

"A sur-reply may only be filed by leave of court, *and only to address new matters raised in a reply to which a party would otherwise be unable to respond.*" *Kanvick v. City of Reno,* No. 3:06–CV–00058, 2008 WL 873085, at *1, n. 1 (D. Nev. March 27, 2008). Further, sur-replies "are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter." *Lacher v. W.,* 147 F.Supp.2d 538, 539 (N.D. Tex.2001).

Here, Plaintiff's Motion for Leave to File Sur-Reply does not assert that Defendants raised any new issues in their Reply. Alternatively, the Court finds that the issues raised in Plaintiff's Motion would not affect the Court's decision on Defendant's Motion for Summary Judgment. More specifically, Plaintiff asserts that Defendant's Exhibit A, the original grievance or kite, is missing "nearly a dozen other attachments that [Plaintiff] affixed thereto," preventing him from appropriately responding to Defendants' Motion for Summary Judgment (Mot. for Leave to File Sur-Reply, ECF No. 49). However, Plaintiff fails to adequately describe what is absent from the grievance and how the missing attachments would allow Plaintiff to more effectively respond to Defendants' Motion. Therefore, the Court denies Plaintiff's Motion for Leave to File Sur-Reply.

### B. Motion for Summary Judgment

Defendants assert that Plaintiff's Fourth and Fourteenth Amendment were not violated because HDSP met both elements of the *Walker* test and "no due process rights were implicated and Plaintiff's Fourteenth Amendment claim fails as a matter of law." (Defs.' Mot. for Summ. J. 5:25, 7:7–8). On the other hand, Plaintiff asserts Defendants are "putting the proverbial cart before the horse," alleging that HDSP did not properly follow procedures and did not adequately carry out the "extensive list of requirements" normally occurring in a sexual assault case. (Pl.'s Resp. 1:17–21).

/ / /

/ / /

### 1. Fourth Amendment[1]

Prisoners, despite their status, are not forced to forfeit all constitutional rights at the prison gate. *See Walker v. Sumner*, 917 F.2d 382, 385 (9th Cir. 1990). "Prison walls do not form a barrier separating prison inmates from the Constitution…Nevertheless, prisoners' constitutional rights are subject to substantial limitations and restrictions in order to allow prison officials to achieve legitimate correctional goals and maintain institutional security." *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 84 (1987)). Extracting blood from a person without consent or a warrant ordinarily constitutes a search within the meaning of the Fourth Amendment. *See Hamilton v. Brown*, 630 F.3d 889, 894 (9th Cir. 2011). Although blood draws are inherently intrusive, the Supreme Court has held that the intrusion is "not significant, since such 'tests are a commonplace in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people, the procedure involves virtually no risk, trauma, or pain." *Skinner v. Ry. Labor Executives' Ass'n,* 489 U.S. 602, 625 (1989) (quoting *Schmerber v. California*, 384 U.S. 757, 772 (1966)).

Because the "touchstone of the Fourth Amendment is reasonableness," warrantless blood draws do not violate Fourth Amendment rights as long as the draw is reasonable. *U.S. v. Kriesel*, 508 F.3d 941, 947 (9th Cir. 2007). Reasonableness is determined by assessing "the degree to which it intrudes upon an individual's privacy and…the degree to which it is needed for the promotion of legitimate governmental interests." *Id.* Further, reasonableness includes whether the blood drawing procedure utilized accepted medical practices. *See Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001). However, when measuring Fourth Amendment reasonableness in regards to prisoners and prison regulations, those regulations that allegedly

---

[1] Plaintiff's claim under Article I, Section 18 of the Nevada Constitution is analogous to the Fourth Amendment claim. Therefore, the Fourth Amendment analysis correspondingly applies to Plaintiff's Nevada Constitution violation.

"infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 349 (1987). Furthermore, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner,* 482 U.S. at 89.

Therefore, to prove a blood draw is a reasonable Fourth Amendment search, the prison must establish: "(1) what the purpose of the blood testing was, and (2) to show that the results were going to be used to further a legitimate penological end." *Walker*, 917 F.2d at 388. Further, the prison must show that the policies are motivated by specific penological interests and demonstrate that the "interests are the bases for their policies and that the policies are reasonably related to the furtherance of the identified interests." *Id.* at 386. The Ninth Circuit found a legitimate penological interest in "diagnosing severe medical problems to prevent transmission of serious disease among the general jail population" and that this interest is sufficient to preclude a blood draw as an unreasonable search within the Fourth Amendment. *See Jones v. Hennessy*, 981 F.2d 1258, 1 (9th Cir. 1992); *see also Florence v. Bd. of Chosen Freeholders of County of Burlington*, 132 S. Ct. 1510, 1528 (2012) (Alito, J., concurring) (finding that preventing the spread of disease in prisons is a legitimate penological interest).

In *Walker,* a Nevada prisoner brought an action against NDOC when prison guards forced him to submit to a blood draw due to the prison's AIDS testing program. *Id.* at 383. The prison argued that the program furthered a penological interest as bearing a "logical connection to the health, safety and welfare of all the inmates" and in "the best interests of public health generally. AIDS testing is clearly a legitimate governmental interest and a valid penological objective." *Id.* at 387. However, the Ninth Circuit deemed "such conclusory assertions" as "wholly insufficient" to sustain the district court's grant of summary judgment. *Id.* The court held that the prison did not proffer any evidence supporting the nexus between the regulations

and the asserted penological interest. *Id.* at 388.  Therefore, because the prison did not sufficiently establish what the purpose of the blood testing was, nor show that the results were used to further a legitimate penological end, the Ninth Circuit held the summary judgment grant inappropriate. *Id.*

Here, HDSP offers sufficient evidence to satisfy both parts of the *Walker* test.  HDSP's policy establishes that the purpose of blood draws in response to allegations of sexual assault among inmates is to effectively test for sexually transmitted diseases, such as AIDS. (Exs. C, F–G to Defs.' Mot. for Summ. J., ECF Nos. 39-3, 39-6, 39-7).  Further, Plaintiff was aware of the sexual assault policy. (Resp. 1:20–25, ECF No. 45).  Although Plaintiff claims that no assault occurred, it is within the prison's duty to provide testing regardless. (Exs. F–G to Defs.' Mot. for Summ. J.).

In regards to the second *Walker* prong, HDSP is furthering a legitimate penological interest by preventing the spread of disease among inmates.  Unlike in *Walker*, where the prison failed to produce evidence of the asserted penological interest, HDSP and Defendants have offered multiple exhibits delineating HDSP's motivations and procedures of the blood draw. (Exs. F–G, I–J to Defs.' Mot. for Summ. J.).  For example, Exhibit F to Defendants' Motion for Summary Judgment is HDSP's Medical Directive 216, which mandates laboratory testing in "[i]ncidents involving possible exchange of bodily fluids." (Ex. F to Defs.' Mot. for Summ. J. at 4).  Moreover, Exhibit G is HDSP's Medical Directive 224, which provides guidelines for the methods and treatment of inmates for evaluation of a possible sexually transmitted disease (Ex. G to Defs.' Mot. for Summ. J. at 2-3), and Exhibit I is HDSP's Medical Directive 117, which enumerates the procedure for treating sexually transmitted diseases. (Ex. I to Defs.' Mot. for Summ. J. at 2-3).  Finally, Defendants provide the declaration of Sharon Clinkscales, the Health Information Director for NDOC, who explains the purpose behind the mandatory treatment: "to prevent the potential or actual spread of sexually transmitted diseases and to

protect the health and safety of the inmates and staff." (Ex. J to Defs.' Mot. for Summ. J. ¶¶ 1, 6). These procedures exemplify the recognized penological interest of protecting other prisoners' safety and health, thus precluding the blood draw as an unreasonable Fourth Amendment search. (Exs. G, J to Defs.' Mot. for Summ. J.).

Plaintiff offers no evidence to raise a genuine issue of material fact regarding either prong of the *Walker* test. Therefore, the Court finds that the unconsented blood draws were reasonable Fourth Amendment searches as a matter of law and grants Defendants' Motion for Summary Judgment on Plaintiff's Fourth Amendment claim.[2]

### 2. Due Process

Plaintiff asserts a Fourteenth Amendment procedural due process violation as a result of HDSP's failure to exhaust procedural investigations of the alleged sexual assault. (Compl. at 9). The Supreme Court has held "the extraction of blood from an individual in a simple, medically acceptable manner, despite the individual's lack of an opportunity to object to the procedure, does not implicate the Due Process Clause." *Schmerber v. California,* 384 U.S. 757, 759–60 (1966). Further, "the Ninth Circuit explicitly has rejected the argument that prison officials are required to provide a hearing before requiring an inmate to provide a blood sample for DNA analysis." *Hamilton v. Brown*, 630 F.3d 889, 896-97 (9th Cir. 2011). Accordingly, Plaintiff's Fourteenth Amendment claim fails as a matter of law.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Leave to File Sur-Reply (ECF No. 49) filed by Plaintiff is **DENIED.**

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment (ECF No. 39) filed by Defendants is **GRANTED**.

---

[2] Defendants also raise the defenses of Qualified Immunity (Defs.' Mot. for Summ. J. 8:6) and Official Capacity (*Id.* at 7:24). However, because the Court finds no violation of a constitutional right, the Court need not address these issues.

The Clerk of the Court shall enter judgment accordingly, and close the case.

**DATED** this 3rd day of February, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge